May it please the Court. My name is Todd Grover. I represent the petitioner-appellant Stephen Forbess. As the Court is aware, this is a case about mental health and equitable tolling. The question presented is whether, due to his mental health, Mr. Forbess is entitled to equitable tolling of the limitations period that governs the filing of federal habeas corpus actions. The District Court found that Mr. Forbess is not entitled to equitable tolling. The District Court clearly erred in that regard. The standard to be applied is that announced by this Court in the case of Bills v. Clark in 2010. It is a two-part standard. In order for a petitioner to be entitled to equitable tolling of the limitations period, he must show that as a result of his mental illness, and it's relevant to the circumstances in this case, that he was unable to rationally understand the need to file a timely habeas petition in the District Court. And secondly, that that mental illness was the but-for cause of his failure to timely file. The District Court in this case correctly concluded that Mr. Forbess was unable to rationally understand the need to file a timely petition due to a longstanding delusional disorder that, to his mind, made it perfectly logical for him not to file any actions but simply to remain in prison. You know, I've got a conceptual question, not yet a factual question, with respect to Mr. Forbess' mental state. And that's the operation of the but-for test as it interacts with equitable tolling. The District Court seems to have thought that because toward the end of this period, for several months, he was sufficiently sane to file, that he therefore, the mental illness was not a but-for cause. An alternative way of understanding equitable tolling for someone who's mentally ill is to say that during the period he was mentally ill, and because the mental illness would not or could not have filed, we simply take that entire period out of the calculus and then look at how many months were left over during which he was sane. Which of those two do we look at? I think it's the latter, Your Honor. I think equitable tolling being an equitable doctrine is designed to give folks who are mentally ill the same chance for federal habeas review as folks who are sane. And what that chance is, is everybody is entitled to one year after their criminal judgment becomes final, 365 days of rational thought to get a habeas petition filed. So just to make sure I understand your position, it would be, and I'm now making up the numbers just so they're easy to absorb, let's say there's two years between the time that the filing date starts to run, the filing period starts to run, and in the middle of that period he is insane for a year and a day. Even though he was sane for a year minus a day, he still gets equitable tolling. That's the theory. That is, Your Honor. I believe that's correct. And the evidence in this case before the district court demonstrates that throughout the period in question, we're talking November of 2001 when the criminal judgment became final until October of 2003 when he stopped the running of the clock by filing a state post-conviction petition. During that roughly 23-month period, there was no period in time when he rationally understood the need to prosecute his habeas claims. In other words, throughout that period of time, he suffered from this delusional belief that the FBI was going to get him out of prison if only he stuck it out and allowed the FBI to use him as bait to draw out these Mafia cartel members. This is his belief, and frankly, from the record, I can tell you that we have psychological evaluations in 2009. He continued to harbor this belief. How did it happen that he didn't know that he had lost his appeal in the state courts? The evidence in the record is this. The appellate judgment became final in November of 2001. Mr. Forbes filed an affidavit in conjunction with the district court proceedings, Your Honor, wherein he averred that he did not learn about the appellate judgment in November of 2001, but in April of 2002, he received a packet of material from his appellate counsel, including a copy of that judgment and a letter informing him essentially that the criminal judgment was then final. So it is ‑‑ it appears to be the case that he simply wasn't informed by appellate counsel. Now, the district court found that fact significant in terms of its analysis of whether or not mental illness was the but‑for cause of the delay in filing. In other words, the district court identified the fact that appellate counsel was negligent and said, well, that appears to be why Mr. Forbes didn't file in a more timely fashion. That finding with respect to the district court is clearly erroneous. Let me ask you this. Let's assume that Mr. Forbes was sane and that he did not ‑‑ was not informed of the decision that triggers the time period running through no fault of his own, and would he be entitled to equitable tolling for the period during which he didn't know through no fault of his own because of the negligence of his appellate counsel? I don't believe so. Under the precedent of this court and the Supreme Court, both courts, Your Honor, have felt that garden variety attorney negligence is not grounds for equitable tolling. So that then triggers the next question, and I think I know the answer, but I would like to hear yours. Assuming, then, that he does not get tolling based upon just the negligence and is for the failure to inform, is there a sufficiently long period of mental illness if we take it out of the entire period that he's still within the filing period of one year? That is to say, does he need that early period on top of his mental illness, or his mental illness, is that enough? His mental illness is enough. The record is replete with evidence that he suffered from the same delusional disorder at least as early as 1999. That's when we have our first psychological evaluation report up through 2009, encompassing the period in question. Is there any reason why a mental impairment such as this couldn't satisfy both Bill's prongs at the same time? I believe it does. I think both Bill's prongs, at least in the context of this case, Your Honor, are taking a look at the same problem from maybe two different perspectives, but we're really simply asking the same question, which is, is it the mental illness that made it effectively impossible for this gentleman to file a timely habeas petition? Okay. Your Honors, I would reserve my remaining time. Let's hear from the State, and then we'll give you a chance to respond. May it please the Court, Caroline Alexander, for Respondent Steve Franke. The fact that Petitioner suffers from some sort of delusional system doesn't address the two prongs in Bill's. That's unrebutted in this record. The record shows that consistently Petitioner has a diagnosis of psychotic disorder, NOS. That doesn't answer the question. The total period began, as the District Court found, in November of 2001. Petitioner at that point was in SMU, Special Management Unit, the psychiatric unit. And the record shows, especially in the words of Dr. Phil, who was the chief psychiatrist of Oregon State Penitentiary, that in fact Petitioner is quite delusional and wasn't understanding rationally capable of carrying on his activities of daily living. The record also shows, however, that as of March 4th of 2002, his mental status drastically improved. He was released from SMU on May 16th of 2002. He had been in SMU for three times. This was the last time. After May 16th, 2002, he was not readmitted to the Special Management Unit. If you compare the two. And when did he file? He didn't file until his post-conviction petition, the properly filed application, until October of 2003. When did he snap out of this delusion that he wasn't supposed to do anything because the FBI was going to come along and save him? That's an interesting question, Your Honor. I think it's an important one, too. It is an important question. And if you look closely at Petitioner's affidavit, which is a critical piece of evidence in this case, as well as the mental health records, you'll notice two things. There's, first of all, a paucity of evidence in the mental health records after 5-16 of 2002 as to this delusional system and to what extent it kept him from filing. There's nothing in the mental health records. He talks about the FBI being after him. He's got these delusions. But nowhere does it say what he says now, which is I thought the FBI would let me out and so I better not do anything, including challenge my convictions. That isn't in the record. You're saying it is not in the record? It is not in the record, in the mental health records. Not in the mental health records, but it's in the records of this case. He says that. Do we have an affidavit from him? It does. In the affidavit, Petitioner talks, which was, again, generated for this case, so it was long after this tolling period. He talks about this delusional system. But in that affidavit, he also says on page 36, ER 36, that as of April of 2002, he realized that there was this delay in hearing about the finality of his direct appeal case. And he became concerned about that. And there's a reason, because he knew that he needed to file to challenge those convictions. He became concerned. Yes, sir? On the first prong of bills, what did the district court find or conclude? The district court found on the first prong of bills that Petitioner's mental illness was severe enough to satisfy the standard in bills, which is that he couldn't rationally understand the need to file or that he personally was unable to file. Are you now arguing that that somehow is clearly erroneous or unsupported by the record? Yes, Your Honor, that is clearly erroneous. Because if you look at the district court opinion, the district court focuses only on psychological evaluations from 1999 and 2000 up to February 25th of 2002, which was Dr. Fickle's report in the SMU. What the State is arguing and what the record shows is that after that point was when Petitioner got much better, seemed to kick into action about April of 2002, understand there was a problem, and he needed to do something. On page 37, ER 37, which is Petitioner's affidavit as well, he also explains, excuse me, that he was seeking assistance from a variety of individuals. Excuse me. He wrote to his appellate attorney in April of 2002. He also wrote to his trial attorney, Ron Cox. He wrote to the ACLU. He wrote to another prison reform group seeking assistance. He knew that he needed to do something. He filed that second state habeas, the improperly filed application, in I believe it was July of 2003. So prior to that, he's working on this stuff. As the district court found on the second prong of bills, the delay caused the problem, the delay in learning about his direct appeal. He was confused about the statute of limitations, which is a common problem in Oregon, because there's a two-year post-conviction statute of limitations, and, of course, AEDPA has only a one-year statute of limitations. It's a trap. We saw in Ferguson v. Palmateer, it's not a trap. But that's a frequent thing that happens to Oregon prisoners is they misunderstand the difference. So he clearly had that problem. And then – Well, let me – if we're talking about clearly erroneous in the excerpt of record at page 319, Volume 4, the date is November 10, 2003. It says, Forbus discussed his belief he was working for the FBI, and the doctor reported that Forbus' delusional system was elaborate, detailed, significant paranoid ideation. Correct. That is November 2003. And you say by that time he had recovered sufficiently to understand what he should do? Yes. And what I'm saying is that under the standard in bills that you have a delusional system doesn't mean that you can't comprehend the need to file. So what the – But the problem here is he thought – he very well may have understood that there was a filing need, but he was operating under delusional belief that he shouldn't do that because the FBI was somehow involved. That's the nature of his mental illness. That's why I think bills – both prongs of bills might well be satisfied by what we're dealing with in this case. Well, Your Honor, look at page 318 of the ER. Okay. And in that – now, that's 1028 of 02. Petitioner's not talking as much about his delusional system. It's paranoid ideation that waxes and wanes over time. But you see, now you're attacking a district court's finding as clearly erroneous, and I'm finding things in the record that would support the district court's finding on this. We don't undercut a district court's – do you know what clearly erroneous means? Some circuits say that the factual – that factual finding has to have the stench of a seven-day-old, unrefrigerated dead fish. That means district court's business, unless this thing is so crazy that nobody could accept it. And I appreciate that, Your Honor. What I'm saying is I think you have – And you think it's that bad, huh? I can smell – I can't smell it from here, but that may be because I'm in Idaho. What I'm – what I'm suggesting, Your Honor, is that the evidence the district court relied on isn't the proper evidence. The district court mentioned the mental health records, just says, oh, yeah, it supports – it supports this finding. But what I'm suggesting is you have to parse that evidence out. And you can pick and choose, depending on the day, and say that supports. Now, if that's enough, then I would agree, Judge Trott, that we would lose from that. Okay. Let me ask you a different question, which is a kind of conceptual legal question that I asked your adversary when he was here. I'm trying to understand the operation of but-for as it interacts with equitable tolling. Your adversary says that what you do is you take the entire period of mental illness that prevents him from understanding the need for filing. You subtract that entire period from the period that's run. And if the leftover period is less than a year, he's timely. Do you agree with that? I think my formulation is a little different, Judge Fletcher. So, again, it's not the mere fact that a petitioner is mentally ill. It – again, under bills, the mental illness has to be so severe that one of these two – No, I understand that. No, I'm assuming that he satisfied the standard that it is – the mental illness during a certain period was so severe that it prevented him from filing, and that during that period, he is excused under equitable tolling. Yes. What I'm asking you is something different, and that is, is he entitled – to state it in the way that your adversary just did – he's entitled for purposes of tolling to a full year of sanity, or at least lack of insanity that prevents him from filing? Put that way, Your Honor, I think I do agree. Okay. And it doesn't matter whether 364 days or 360 days follow the period of insanity. Just doesn't matter. He's entitled to the full period, however it falls. Yes. Okay. So we're on the same page. Yes. So in this case, here's – using our dates, here's how we formulate that. So the tolling period began on 11-28-01, when his direct appeal was final. For – I'll give you the first five months when he was in SMU, to May 16th of 2002, the two prongs of bills are met. So even though the record shows that his mental health improved markedly on March 4th of 2002 or by March 4th of 2002, on May 16th of 2002, the statute again begins running. And then on May 16th of 2002, he's got until May 15th of 2003, a full year, to file that petition. So in this case, he didn't file that properly filed petition until October of 2003. So he's still six months. But it seems to me that what you're relying on is the period of insanity that excuses him is the period in which he was confined in the SMU, and that as soon as he's out, that for you is a sign that he's sufficiently sane that we can hold it against him. Is that what you're saying? No, Your Honor. Not exactly what I'm saying. I think I'm using those dates because those dates correspond with especially Dr. Fickle's reports and then the chart notes as well in the mental health – his mental health chart notes correspond to this improvement beginning in March of 2002 and continuing until he's discharged on May 16th. Thereafter, the evidence just isn't sufficient to show that either the mental illness was so severe that it caused him to be unable to file the petition or that it was the but-for-cause. Now, I've got a different question, and it's kind of off to one side. Here we are in the Court of Appeals, extensive briefing here, extensive briefing below. The statute of limitations is, of course, a waivable defect. I don't know the underlying merits of his habeas petition. It may be powerful. It may be frivolous. Has your office considered looking at the underlying merits, concluding that the petition is basically frivolous and not litigating all this stuff about the statute? This is a royal pain to everybody to be litigating this statute of limitations problem. It's true, Your Honor, and I would give you that. When I was assigned to this case, I did look at the merits. I don't have much of a memory now. I couldn't discuss them. And I have no knowledge at all of the merits, so I'm speaking in that sense in complete ignorance. Yeah. I believe that I had concluded that there wasn't much to the merits, but I have nothing to back that at this point. Now, you can see that he was mentally ill for a significant period sufficient to stop the clock. Am I correct? Yes. All right. Now, describe to me what you believe that mental illness was that was sufficient to stop the clock. The nature of the mental illness, Your Honor? Yes. Okay. He has a diagnosis of psychotic disorder not otherwise specified, which is a DSM diagnosis. Well, what I'm getting at is do you include his delusion that he shouldn't do anything because the FBI was going to save him? It's part of his delusional system, yes, I would imagine. And that is part of the record in the affidavit. It's not part of the mental health record. So do you concede or not that it was involved in the first period in which you say he was mentally ill? Was his delusion part of that? I can't answer that, Your Honor. I don't think the record shows that, but I think that the mental health records and Dr. Pickles' evaluations in that first part of 2002 are enough to meet the bill's standard. Do they or do they not say anything about the FBI? Yes. They do? Yes. So this was part of it. And so then again, in November 2003, we still see that he says he's working for the FBI and his delusional system is elaborate, detailed, significant paranoid ideation. So it carries over. I just don't see how you can show us that the district court's finding was clearly erroneous. And I also believe that the nature of the delusion here satisfies both prongs. This was the but-for cause, if it continued that long. And, Your Honor, acknowledging that and to answer Judge Fletcher's question more fully, the reason we litigate it is because of the Supreme Court standard for equitable tolling. It's a rare circumstance. And this Court may find that the State is parsing the record too fine, but I think that that's what the U.S. Supreme Court requires us to do, that you don't come to a conclusion like the district court said that just because an inmate is mentally ill, he's entitled to blow at the statute of limitations. No, it depends on the nature of the mental illness. I agree with you. Absolutely. And the duration of the mental illness. And Petitioner has a mental illness that waxes and wanes. And when he's on medication and over the course of time, he got better. And even though he aversed in his affidavit this very elaborate delusional system about the FBI, you know, busting in loose when it was ready to, it's just not supported by the mental health records during the tolling period. And that's really the critical issue here, is what was going on during that tolling period. It's Petitioner's burden. He could have put on an expert that talked about that. He could have called Dr. Fickle in the evidentiary hearing to explain that. Was he pro se in the district court? No. He was representative. Yeah. So he could have put on evidence that more clearly delineated what was going on between May of 2002 to May of 2003, and he didn't do that. The one expert that he called didn't say anything about it, and he just, you know, concluded, very conclusory conclusion, that during the tolling period he, you know, he was mentally ill. Okay. But that's just not sufficient. Okay. Thank you. Thank you. Any further questions from the bench? No, thanks. Thank you very much. Response? Your Honor, I believe the Court has a handle on the record in this case. I don't have further arguments unless Your Honor has questions for me. Okay. No, thank you very much. Thank both sides for your very helpful arguments. Thank you. Four of us, and now I say it's Frankie, so four of us versus Frankie now submitted for decision.
judges: Goodwin, Trott, Fletcher